UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JUNELLE I. PERRY,

                            Plaintiff,

v.                                                    3:15-CV-0758
                                                      (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                          OF COUNSEL:

COUGHLIN & GERHART, LLP               SCOT G. MILLER, ESQ.
  Counsel for Plaintiff
P.O. Box 2039
Binghamton, NY 13902-2039

U.S. SOCIAL SECURITY ADMIN.           HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Junelle I. Perry

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos.10, 11.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff has a high school education, and has past work as a fast food worker, a receptionist, and a cashier.  (T. 27, 220-21.)[1]  Generally, Plaintiff's disability consists of bipolar disorder and herniated discs in her spine.  (T. 219.)

### B.   Procedural History

On October 1, 2011, Plaintiff applied for a period of Disability and Disability Insurance Benefits, alleging disability beginning February 14, 2010.  (T. 19.)  Plaintiff's application was initially denied on January 10, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  On December 5, 2013, and May 2, 2013, Plaintiff appeared in hearings before the ALJ, Robert E. Gale.  (T. 30-79.)  On January 22, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-29.)  On May 18, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 21-28.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, and has not engaged in substantial gainful activity since February 14, 2010, the alleged onset date.  (T. 21.)  Second, the ALJ found that Plaintiff's lumbar spine degenerative disc disease, obsessive-compulsive

---

[1]      Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

disorder, generalized anxiety disorder, and mood disorder are severe impairments, but that

Plaintiff's obesity and history of alcohol abuse are not severe impairments under the regulations.

(T. 21-22.)  The ALJ explained that, by finding that Plaintiff has a severe mental impairment,

however characterized, all symptoms affecting her mental functioning were considered.  (T. 22.)

Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the

"Listings").  (T. 22-24.)  The ALJ considered Listings 1.04, 12.04, and 12.06.  (*Id.*)  Fourth, the

ALJ found that Plaintiff has the residual functional capacity ("RFC")

> to perform less than the full range of sedentary work as defined in 20
> CFR 404.1567(a).  She can lift, carry, push, and pull up to 10 pounds
> occasionally and less than 10 pounds frequently; sit for six hours in
> an eight-hour workday; and stand/walk for two hours in an eight-hour
> workday.  She can understand and follow simple instructions and
> directions both independently and with supervision.  She can relate
> to and interact appropriately with others to the extent necessary to
> carry out simple tasks.  She can handle usual levels of simple work-
> related stress.  She can make appropriate decisions related to the
> performance of simple tasks in a job not requiring the claimant to
> supervise or manage the work of others with no more than occasional
> conversations and interpersonal interaction with others.

(T. 24-27.)  Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T.

27.)  Sixth, and finally, the ALJ determined that there are other jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  (T. 27-28.)

### D.      The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts two arguments in support of her motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ erred in evaluating the opinion evidence.  (Dkt.

No. 10, at 2, 20-24 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that the ALJ erred

in assessing the opinions of Plaintiff's mental abilities and limitations from (1) treating

psychiatrist David Carr, M.D., (2) treating primary care physician Michael Tunick, M.D., (3) consultative mental examiner Mary Ann Moore, Psy.D., and State agency medical consultant, L. Blackwell, Ph.D. (*Id.*, at 20-24.) Second, Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (*Id.*, at 24-26.) Within this argument, Plaintiff argues that (1) the ALJ's RFC assessment was improperly based on his "selective reading" of Dr. Moore's opinion and the "relatively uninformed" opinion of Dr. Blackwell, (2) Dr. Moore and Dr. Blackwell's opinions do not set forth restrictions with sufficient specificity to support the ALJ's RFC, (3) the ALJ's credibility analysis improperly relied upon his "selective reading" of the medical evidence, (4) the ALJ erred in assigning significant weight to a "selective reading" of Dr. Carr and Ms. Warneck's joint opinion of May 21, 2013, and (5) the ALJ erroneously indicated that Ms. Carr and Ms. Warneck's joint opinion was rendered by Ms. Warneck only. (*Id.*, at 25.)

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the opinion evidence. (Dkt. No. 11, at 7-12 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's RFC determination was supported by substantial evidence. (*Id.*, at 12-15.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for

doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

**A.      Whether the ALJ Properly Assessed the Mental Opinion Evidence**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 7-12 [Def.'s Mem.

of Law].)  To those reasons, the Court adds the following analysis.

Social Security regulations define medical opinions as "statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature and

severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and

prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical

or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  The ALJ must consider opinions from

acceptable medical sources, and may consider opinions from other sources, to show how a

claimant's impairments may affect his or her ability to work.  20 C.F.R. § 404.1513(a)(1)-(5)

(identifying the five types of acceptable medical sources as: (1) licensed physicians, (2) licensed

or certified psychologists, (3) licensed optometrists, (4) licensed podiatrists, and (5) qualified

speech-language pathologists).

Under the "treating physician's rule," controlling weight is afforded to an opinion from a

plaintiff's treating physician when (1) the opinion is well supported by medically acceptable

clinical and laboratory diagnostic techniques, and (2) the opinion is not inconsistent with other

substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. §

404.1527(c); *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015), *Brogan-Dawley v. Astrue*, 484

F. App'x 632, 633-34 (2d Cir. 2012).  Regulations require an ALJ to set forth his or her reasons

for the weight afforded to a treating physician's opinion.  *Greek,* 801 F.3d at 375; *Shaw v.

Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when

assessing a medical opinion from another source, the ALJ should consider the following factors

to determine the proper weight to afford the opinion: (1) the frequency, length, nature and extent of the physician's treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. 20 C.F.R. § 404.1527(c); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (listing regulatory factors).

Here, the record contains medical opinions of Plaintiff's mental limitations from (1) treating primary care physician Michael Tunick, M.D., (2) consultative mental examiner Mary Ann Moore, Psy.D., (3) State agency mental consultant L. Blackwell, Ph.D., and (4) treating psychiatrist David Carr, M.D., and treating counselor Elizabeth Warneck, L.C.S.W., from Chenango County Mental Health.

### i. Treating Primary Care Physician Dr. Tunick

On March 7, 2012, Dr. Tunick completed a mental RFC assessment form. (T. 333-35.) Therein, Dr. Tunick opined that Plaintiff had a "poor" ability to deal with stress, maintain attention and concentration, and behave in an emotionally stable manner; a "fair" ability to deal with the public, function independently, relate predictably in social situations, and demonstrate reliability; and a "good" ability to follow work rules, relate to coworkers, interact with supervisors, and maintain her personal appearance.[2] (T. 334.) Finally, Dr. Tunick opined that Plaintiff would likely be "off-task" between 15 and 30 percent of the workday and would miss more than three workdays per month due to her impairments. (T. 333.)

The ALJ afforded "some weight" to Dr. Tunick's opinion of Plaintiff's mental abilities

---

[2] The assessment form stated that "poor" means that an individual's ability to function is very limited, and will be unsatisfactory over 50 percent of the time; "fair" means that an individual's ability to function is often satisfactory but will be unsatisfactory 25 to 50 percent of the time; and "good" means that an individual's ability to function is satisfactory. (T. 334.)

and limitations, reasoning that the opinion is from a treating source who is familiar with Plaintiff's treatment and progress. (T. 27. ) However, the ALJ did not accept Dr. Tunick's opinion regarding Plaintiff's likely time spent off task and absences from work, reasoning that Dr. Tunick's opinion was inconsistent with objective findings and Dr. Tunick's own conclusions regarding Plaintiff "significant ability" to deal with others, use judgment, and function independently. (*Id.*)

The ALJ noted that, upon examination, Dr. Tunick consistently observed that Plaintiff's speech was clear and fluent, her mood was normal, her affect was appropriate, her thought processes were coherent and logical, her associative thinking was intact, her judgment was realistic, and her insight was appropriate.[3] (T. 25.) The ALJ further noted that, while Dr. Tunick indicated that Plaintiff was depressed and withdrawn, he also stated that Plaintiff's mental health treatment had been helping and Plaintiff reported to Dr. Moore that her medication helped level her moods. (*Id.*) Additionally, Dr. Tunick stated that Plaintiff was able to relate to him, and related well with her daughter. (T. 333.) Moreover, the ALJ considered medical opinion evidence that Plaintiff had a greater ability to stay on task than opined by Dr. Tunick, including Dr. Carr and Ms. Warneck's May 2013 opinion that Plaintiff had no limitation in sustained concentration and persistence. (T. 27.)

In sum, the Court finds that the ALJ properly assessed the regulatory factors in evaluating Dr. Tunick's opinion by considering his professional credentials, treatment relationship with Plaintiff, treatment notes, and the consistency of his opinion with other medical

---

[3]     *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that an ALJ was not required to afford controlling weight to a physician's opinion that conflicted with his own treatment notes); 20 C.F.R. § 404.1527(c)(3) (stating that, the more a medical source presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be afforded to the opinion).

evidence of record. (T. 22-27); 20 C.F.R. § 404.1527(c). Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Accordingly, the Court finds that the ALJ's assessment of Dr. Tunick's mental opinion was supported by substantial evidence, and remand is not required on this basis.

### ii. Consultative Mental Examiner Dr. Moore, and State Agency Mental Consultant Dr. Blackwell

On December 21, 2011, Dr. Moore examined Plaintiff and diagnosed her with bipolar disorder with psychotic features, panic disorder without agoraphobia, generalized anxiety disorder, post traumatic stress disorder ("PTSD"), and alcohol abuse (in remission). (T. 301.) Upon examination, Dr. Moore observed that Plaintiff had a flat affect and restricted mood, but was generally cooperative in response to questioning and her manner of relating socially was adequate. (T. 300.) Dr. Moore observed that Plaintiff's speech intelligibility was somewhat raspy, but fluent; her expressive and receptive language abilities were adequate; and her thought processes were coherent and goal directed. (*Id.*) Dr. Moore further observed that Plaintiff's attention and concentration were mildly impaired, her recent and remote memory skills were intact, her cognitive functioning was in the average range, and her insight and judgment appeared fair. (T. 301.)

Dr. Moore opined that Plaintiff could follow and understand simple directions and instructions, perform simple rote tasks, and had a "mild impairment" with attention and concentration, but her memory was intact. (T. 302.) Dr. Moore opined that Plaintiff could learn

simplistic and complex tasks, but had difficulty dealing with stress and could exhibit wide mood swings, depression, and anxiety, which may interfere with her ability to relate adequately with others, make appropriate work decisions, and maintain a regular work schedule. (*Id.*) Dr. Moore indicated that the results of the examination appeared to be "consistent with psychiatric issues that may significantly interfere with the claimant's ability to function on a daily basis." (*Id.*) On January 6, 2012, Dr. Blackwell reviewed Plaintiff's medical records and provided an assessment of Plaintiff's mental RFC. (T. 322-24.) Dr. Blackwell adopted Dr. Moore's opinion of Plaintiff's mental abilities, and opined that Plaintiff could perform simple work. (T. 324.)

In determining Plaintiff's mental RFC, the ALJ afforded "considerable weight" to Dr. Moore's opinion, reasoning that it was rendered after a thorough examination by a physician with extensive program and professional expertise. (T. 26.) Additionally, the ALJ afforded "significant weight" to Dr. Blackwell's opinion, reasoning that it was rendered after a thorough review of the sum of the evidence by a physician with extensive program and professional expertise, and the opinion was well supported by Plaintiff's "high level of activity." (*Id.*) For example, elsewhere in the decision, the ALJ noted that Plaintiff had no difficulty getting along with her family members, attended church and spent time with others weekly, performed childcare activities and household chores with the assistance of her mother and sister, shopped for groceries weekly, prepared meals daily, and read as a hobby. (T. 23, 25.)

First, the Court notes that an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion

evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Second, the ALJ properly applied the regulations in evaluating Dr. Moore and Dr. Blackwell's opinions. As discussed above, the ALJ considered Dr. Moore and Dr. Blackwell's professional credentials and disability program knowledge, Dr. Blackwell's review of the medical evidence, Dr. Moore's examination of Plaintiff, and the consistency of their opinions with other substantial evidence, including Dr. Moore's examination findings and Plaintiff's activities. 20 C.F.R. § 404.1527(c); *Atwater*, 512 F. App'x at 70.

For these reasons, the Court finds that the ALJ's evaluation of Dr. Moore and Dr. Blackwell's opinions was supported by substantial evidence.

### iii. Treating Psychiatrist Dr. Carr and Counselor Ms. Warneck

On February 22, 2013, Dr. Carr and Ms. Warneck from Chenango County Mental Health provided a joint opinion of Plaintiff's mental limitations due to her obsessive compulsive disorder, generalized anxiety disorder, and borderline personality disorder. (T. 484.) Dr. Carr and Ms. Warneck indicated that Plaintiff had been treated at Chenango County Mental Health with biweekly individual therapy and monthly medication management since February 2012. (*Id.*) Dr. Carr and Ms. Warneck opined that Plaintiff had "poor" functioning in dealing with the public, dealing with stress, and relating predicably in social situations; "fair" functioning in relating to coworkers, interacting with supervisors, and behaving in an emotionally stable manner; and "good" functioning in following work rules, using judgment, functioning independently,

maintaining personal appearance, and demonstrating reliability.[4] (T. 485.) Dr. Carr and Ms. Warneck further opined that Plaintiff would be "off task" over 50 percent of the workday due to needed rest periods, distraction, lack of focus, or other factors attributed to her mental impairments. (T. 484.)

On May 21, 2013, Dr. Carr and Ms. Warneck provided a second opinion of Plaintiff's work-related mental abilities and limitations at the request of the Social Security Administration.[5] (T. 490.) Dr. Carr and Ms. Warneck opined that Plaintiff had no limitation in the functional areas of understanding and memory, sustained concentration and persistence, and adaption. (T. 497.) Dr. Carr and Ms. Warneck opined that Plaintiff was limited in social interaction, explaining that Plaintiff had "significant anxiety regarding social situations." (T. 27, 497.)

In determining Plaintiff's mental RFC, the ALJ afforded "little weight" to Dr. Carr and Ms. Warneck's joint opinion of February 22, 2013, reasoning that the sum of the evidence demonstrates that Plaintiff has greater abilities than those opined. (T. 27.) The ALJ afforded "significant weight" to Dr. Carr and Ms. Warneck's joint opinion of May 21, 2013, reasoning that it is a treating source opinion that is consistent with Plaintiff's high level of activity. (*Id.*) For example, elsewhere in the decision, the ALJ noted that Plaintiff had no difficulty getting along with her family members, attended church and spent time with others weekly, performed childcare activities and household chores with the assistance of her mother and sister, shopped for groceries weekly, prepared meals daily, and read as a hobby. (T. 23, 25.) *See Roma v. Astrue,* 468 F. App'x

---

[4] The assessment form stated that "poor" means that an individual's ability to function is very limited, and will be unsatisfactory over 50 percent of the time; "fair" indicates that an individual's ability to function is often satisfactory, but will be unsatisfactory 25 to 50 percent of the time; and "good" indicates that an individual's ability to function is satisfactory. (T. 485.)

[5] The ALJ's decision indicated that Ms. Warneck rendered this opinion. (T. 27.) The Court notes that Dr. Carr and Ms. Warneck cosigned the opinion. (T. 498.)

16 (2d Cir. 2012) (finding that the ALJ properly declined to afford controlling weight to a treating physician's opinion that was inconsistent with other substantial evidence, including the plaintiff's testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including driving, reading, sending email, and independently performing activities of daily living).  Additionally, the ALJ considered medical opinion evidence indicating that Plaintiff had greater abilities in social interaction than opined by Dr. Carr and Ms. Warneck, including Dr. Turick's opinion that Plaintiff had a "good" ability to relate to coworkers and interact with supervisors.  (T. 27, 485.)

Next, the Court turns to Plaintiff's argument that the ALJ incorrectly indicated that Dr. Carr and Ms. Warneck's May 2013 joint opinion was from Ms. Warneck only.  (Dkt. No. 10, at 25 [Pl.'s Mem. of Law].  Plaintiff's point that the ALJ did not indicate that Ms. Warneck's opinion was a joint opinion with Dr. Carr is well taken.  Accordingly, the Court has undertaken a searching review of the record and concluded that the substance of the treating physician rule was not traversed for the following reasons.  *See Halloran v. Barnhart,* 364 F.3d 28, 33 (2d Cir. 2004) (concluding that the substance of the treating physician rule was not traversed despite it being unclear whether the ALJ considered , or was even aware of, the applicability of the treating physician rule); *accord, Camille v. Colvin,* , 15-CV-2087, 2016 WL 3391243, at *1 (2d Cir. 2016).

Here, the ALJ afforded "significant weight" to Dr. Carr and Ms. Warneck's May 2013 joint  opinion, and the ALJ's mental RFC determination incorporated their opined limitation in social interactions.  (T. 24, 27.)  More specifically, the ALJ's RFC limited Plaintiff to work with no more than occasional conversations and interpersonal interaction with others.  (T. 24-27.)  This Court has found that a claimant with a marked limitation in performing a work-related function could perform that function occasionally.  *See Fiducia v. Comm'r of Soc. Sec.,* 13-CV-0285, 2015

WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (finding that even a marked limitation in interacting with others does not establish that the plaintiff is disabled, particularly where the ALJ limited the plaintiff to occasional interaction with the public and coworkers).  Accordingly, the Court rejects Plaintiff's argument that the ALJ erred in assigning significant weight to a "selective reading" of Dr. Carr and Ms. Warneck's May 2013 joint opinion (that Plaintiff was limited in social interaction because of anxiety about social situations, and had no limitation in understanding and memory, sustained concentration and persistence, and adaption).

In any event, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a physician's opinion but not to another portion).

Finally, the Court rejects Plaintiff's argument that the ALJ failed to analyze the required regulatory factors in evaluating the opinions of Dr. Carr and Ms. Warneck.  (Dkt. No. 10, at 2, 20-24 [Pl.'s Mem. of Law].)  As discussed above, the ALJ considered Dr. Carr and Ms. Warneck's respective professional credentials and treatment relationship with Plaintiff, and considered the consistency of their opinions with other substantial evidence, including Plaintiff's activities.  (T. 22-27); 20 C.F.R. § 404.1527(c).  Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater,* 512 F. App'x at 70 (holding that, where plaintiff challenged ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor

[was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the Court finds that the ALJ properly evaluated the medical opinions of Plaintiff's mental abilities and limitations, and remand is not required on this basis.

## B. Whether the ALJ's Mental RFC Determination was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 7-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Residual functional capacity ("RFC") is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 [July 2, 1996]). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6; *accord* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin,* 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). Finally, an ALJ's RFC

determination "must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

First, the Court turns to Plaintiff's argument that the ALJ's RFC assessment was improperly based on his "selective reading" of the mental opinion evidence, including Dr. Moore's opinion and Dr. Carr and Ms. Warneck's May 2013 joint opinion. To be sure, an ALJ cannot "cherry-pick" only the evidence from medical sources that supports a particular conclusion and ignore the contrary evidence. *Bush v. Colvin,* 13-CV-0994, 2015 WL 224764, at *11 (N.D.N.Y. Jan. 15, 2015); *Royal v. Astrue,* 11-CV-0456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (citing, *inter alia, Fiorello v. Heckler*, 725 F.2d 174, 175-76 [2d Cir. 1983]). However, a review of the decision indicates that the ALJ appropriately considered each medical opinion, including evidence contrary to the RFC, and explained his reasoning for the weight afforded to each opinion as discussed above in Part III.A. of this Decision and Order. (T. 22-27.)

Moreover, it is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R. § 404.1545. In formulating a plaintiff's RFC, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos*, 2014 WL 788791, at *9. Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Next, the Court turns to Plaintiff's argument that Dr. Moore and Dr. Blackwell's opinions (discussed above in Part III.A.ii. of this Decision and Order) were vague and did not set forth restrictions with sufficient specificity to support the ALJ's mental RFC. (Dkt. No. 10, at 25 [Pl.'s Mem. of Law].) In support of her argument, Plaintiff cites cases where reviewing courts have found that a consultative physical examiner's use of the terms "moderate" and "mild," without additional information, was so vague as to render the opinion useless in evaluating whether the plaintiff can perform the exertional requirements of light or sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) (superceded by statute on other grounds); *Young v. Comm'r of Soc. Sec.*, 13-CV-0734, 2014 WL 3107960 at *9 (N.D.N.Y. July 8, 2014); *Adesina v. Astrue*, 2014 WL 5380938, at *7 (E.D.N.Y. Oct. 22, 2014).

Notably, Plaintiff's argument does not specify how Dr. Moore and Dr. Blackwell's opinions were too vague to support the ALJ's mental RFC determination. Liberally construed, it appears that Plaintiff's argument objects to Dr. Moore's use of the term "mild" in his opinion (adopted by Dr. Blackwell) that Plaintiff had a "mild" impairment in attention and concentration. However, the ALJ's RFC determination also relied on Dr. Carr and Ms. Warneck's May 2013 opinion that Plaintiff had "no" limitation in sustained concentration and persistence. (T. 27.) Moreover, Dr. Moore and Dr. Blackwell's opinions indicated that, despite any other mental limitation, Plaintiff could perform simple work. (T. 298-303, 322-24.) Reviewing courts have found that, "when medical evidence demonstrates that a claimant can engage in simple routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a plaintiff to only unskilled work sufficiently accounts for such limitations." *See Bartell v. Comm'r of Soc. Sec.,* 13-CV-0843, 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (finding that the ALJ's RFC assessment limiting Plaintiff to simple unskilled work was consistent with (1) her

determination that the plaintiff had moderate difficulties of concentration, persistence, and pace, and (2) a medical opinion indicating that, despite the plaintiff's limitations, he could perform the basic activities of unskilled work); *accord, Woodmancy v. Colvin,* 12-CV-0991, 2013 WL 5567553, at *4 (N.D.N.Y. Oct. 9, 2013) (holding that the ALJ did not err in failing to make specific accommodations for a plaintiff's impaired ability to cope with work stress in the RFC because the ALJ relied on the opinion of a medical expert who opined that the plaintiff could still perform basic work tasks despite his difficulty handling stressors).

For these reasons, the Court finds that the ALJ's mental RFC determination was supported by substantial evidence, including Dr. Tunick's opinion, Dr. Moore and Dr. Blackwell's opinions, and Dr. Carr and Ms. Warneck's joint opinion of May 21, 2013, discussed above in Part III.A. of this Decision and Order. Therefore, remand is not required on this basis.

## C.     Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 13-14[Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient

specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 21-28.) Throughout the decision, the ALJ articulated the inconsistencies that he considered in assessing

the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged.

First, the ALJ considered inconsistencies in Plaintiff's statements regarding her alleged symptoms and limitations. (T. 21-28.) For example, the ALJ noted that Plaintiff received unemployment benefits subsequent to the alleged date of disability, which required certifying that the is "ready, willing, and able to work." (T. 25.) *See House v. Comm'r,* 09-CV-0913, 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012) (listing the plaintiff's receipt of unemployment benefits and certification that he was ready, willing, and able to work during the period of alleged disability as support for the ALJ's adverse credibility determination); *Frawley v. Colvin,* 13-CV-1567, 2014 WL 6810661, at *11 (N.D.N.Y. Dec. 2, 2014).

Second, as discussed above in Part III.A. of this Decision and Order, the ALJ considered medical opinion evidence and examination findings that were inconsistent with Plaintiff's allegations of disabling symptoms, as well as measures that Plaintiff took to relieve her symptoms. (T. 22-27.) The ALJ noted that, while Dr. Tunick indicated that Plaintiff was depressed and withdrawn, Dr. Tunick's mental RFC assessment reported that Plaintiff's mental health treatment had been helping, and Plaintiff reported to Dr. Moore that her medication helped level her moods. (T. 25.)

Third, the ALJ considered Plaintiff's activities of daily living. (T. 23, 25.) The ALJ noted that Plaintiff reported that she had no difficulty getting along with her family members, attended church and spent time with others weekly, performed childcare activities and household chores with the assistance of her mother and sister, shopped for groceries weekly, prepares meals daily, and reads as a hobby. (T. 23, 25.) *See Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (finding that the plaintiff's activities, including childcare, watching television, reading, using the

computer, and occasional vacuuming, washing dishes, and driving, supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980) (finding that the plaintiff's report that she could "cook, sew, wash and shop, so long as she did these chores slowly and takes an afternoon rest" supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling.).

In sum, the Court finds that the ALJ complied with the regulations and articulated the inconsistencies that he considered in discrediting Plaintiff's allegations of disabling impairments. Therefore the Court rejects Plaintiff's argument that ALJ's credibility analysis improperly relied upon a "selective reading" of the medical evidence. Where, as here, the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

In this case, the ALJ appropriately used her discretion as fact-finder to determine that Plaintiff's statements were not credible. *Mimms v. Heckler,* 750 F. 2d 180, 186 (2d Cir. 1984.) "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alterations omitted). Accordingly, the Court must uphold an ALJ's credibility determination where, as here, it is supported by substantial evidence. *Aponte*, 728 F.2d at 591. Therefore, remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:  January 23, 2017
   Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge